## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

DERRICK LUCKEY,                              )
FATHER AND NEXT FRIEND OF                    )
DANYELLE LUCKEY, Deceased                    )
3786 Arlington Circle                        )
Pittsburg, CA 94565                          )
                                             )
   *Plaintiff,*               )
                                             )
 v.                                     )  Civil Action No. 1:25-cv-299.
                                             )
THE HONORABLE PETE HEGSETH,                  )
in his official capacity as                  )
SECRETARY OF DEFENSE,                        )
1000 Defense Pentagon,                       )
Washington, DC 20301-1000                    )
                                             )
DEPARTMENT OF DEFENSE –                      )
DEFENSE HEALTH AGENCY                        )
7700 Arlington Boulevard, Suite 5101         )
Falls Church, VA 22042-5101                  )
                                             )
   *Defendants.*              )

## <u>COMPLAINT</u>

### *Introduction*

Danyelle Luckey was a young, enthusiastic seaman who began her service in the U.S. Navy aboard the *USS Ronald Reagan* (CVN-76). Danyelle should have enjoyed a long tenure serving her country in the Navy. But in October 2016, only a few months after her Naval career began, Danyelle tragically lost her life.

Following Danyelle's death, the Navy repeatedly represented to her father, Derrick Luckey, the Plaintiff in this action, that Danyelle had died of natural causes. Yet on October 24, 2017, an independent autopsy revealed that Danyelle's death had in fact been caused by the inexcusable negligence of the *Ronald Reagan*'s Medical Department.

Plaintiff brought a claim on Danyelle's behalf against the Department of Defense under the Military Medical Accountability Act, codified at 10 U.S.C. § 2733a(a). The claim was filed on or about January 9, 2020. It thus complied with the Department of Defense's filing requirements. *See* 32 C.F.R. §45.2(c)(2), (c)(3)(ii).

However, after denying the Plaintiff's initial claim, the Defense Health Agency denied Plaintiff's appeal on or about February 16, 2022, asserting that the Plaintiff's claim was untimely and that the Plaintiff had failed to comply with 32 C.F.R. § 45.5(b)(2) "because the medical care at issue was not provided at a covered Military Treatment Facility."

Plaintiff now brings this action, pursuant to 5 U.S.C. § 706 (2)(A)-(D), which will demonstrate that 1) the Defense Health Agency, in violation of 32 C.F.R. § 45.2(c)(3)(ii), declined to apply the discovery rule to the Plaintiff's claim; 2) by enacting 32 C.F.R. § 45.5(b)(2), the Secretary of Defense promulgated regulations which defy the plain text of 10 U.S.C. § 1073d, depriving Plaintiff of his due process rights; and, 3) by applying 32 C.F.R. § 45.5(b)(2) to the Plaintiff's claim, the Defense Health Agency made a decision contrary to law and violative of the Plaintiffs due process rights.

## Jurisdiction

1.      This Court has jurisdiction under 28 U.S.C. § 1331 and under 5 U.S.C. §706 (2)(A)-(D), which provides for redress in the district courts for agency action, findings, and conclusions which are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or without observance of procedure required by law.

2.      Under the Military Medical Accountability Act, codified at 10 U.S.C. § 2733a, servicemembers, or in the case of deceased servicemembers, their authorized representatives, may file medical malpractice claims against the Secretary of Defense. *See* 10 U.S.C. § 2733a(a), (b)(1).

3.      10 U.S.C. § 2735 bars judicial review of the factual merits of claims brought under 10 U.S.C. § 2733a(a).

4.      However, 10 U.S.C. § 2735 does not prevent this Court from reviewing claims brought under 10 U.S.C. § 2733a(a) "'where there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error 'going to the heart of the administrative determination[.]'" *Broadnax v. U.S. Army,* 10 F.2d 865, 867 (D.C. Cir. 1983) (quoting *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 791 (1985)).

5.      Accordingly, this Court may review a 10 U.S.C. § 2733a(a) claim if the claimant alleges that the Secretary of Defense or the Defense Health Agency "violated a clear statutory mandate or prohibition, and to consider constitutional claims." *See Larumbe v. Austin*, 2023 WL 7156529 at *3 (October 31, 2023) (collecting cases and finding that although 10 U.S.C. § 2735 generally "precludes judicial review of the military's disallowance of a claim under [10 U.S.C. § 2733a(a)] the Court interprets the provision not to bar review of a constitutional claim or a violation of a clear statutory mandate.") (internal citations omitted).

6.      This is consistent with this Circuit's "well-settled and strong presumption in favor of judicial review." *Make The Rd. New York v. Wolf*, 962 F.3d 612, 624 (D.C. Cir. 2020).

### *Venue*

7.      Venue is proper under 28 U.S.C. §1391.

*Parties*

8.      Plaintiff, Derrick Luckey, resides at the address listed in the caption and is the duly appointed executor of the estate of his deceased daughter, Danyelle Luckey. Together with his wife, Annette Luckey, Plaintiff brought a claim against the United States on behalf of Danyelle Luckey, pursuant to 10 U.S.C. § 2733a(a), (b)(1) and 32 C.F.R. § 45.3(a)(1).

9.      Defendant, the Honorable Pete Hegseth, is named exclusively in his official capacity as Secretary of Defense. The Secretary of Defense has been empowered by Congress to "settle, and pay a claim against the United States for personal injury or death incident to the service of a member of the uniformed services that was caused by the medical malpractice of a Department of Defense health care provider." 10 U.S.C. § 2733a(a).

10.      Defendant, Defense Health Agency, is an agency of the United States government which can be located at the address listed in the caption. The Defense Health Agency has been empowered by the Secretary of Defense to administratively support Appeals Boards which hear appeals of claims filed under 10 U.S.C. § 2733a. *See* 32 U.S.C. § 45.13(b): "Appeals will be decided by an Appeals Board administratively supported by the Office of the General Counsel, Defense Health Agency… there is a single DoD Appeals Board. The Appeals Board will consist of DoD attorneys designated by the Defense Health Agency from that agency and/or the Military Departments who are experienced in medical malpractice claims adjudication."

11.      On February 16, 2022, Plaintiff received a letter denying his claim which was addressed to him from the Defense Health Agency, printed on Defense Health Agency letterhead and signed by Gregory Girard, Chair of the Military Malpractice Claims Board.

*Timeliness*

12.    Plaintiff received a letter denying his claim on February 16, 2022. Therefore, this action is timely filed. *See* 28 U.S.C. § 2401(a).

*Statement of the Facts*

13.    Danyelle Luckey, now deceased and the daughter of the Plaintiff, was an active-duty servicemember in the U.S. Navy who reported for duty onboard the *Ronald Reagan* in July 2016.

14.    The *Ronald Reagan* was Danyelle's first duty station, and she was extremely excited to serve.

15.    By October 2016, while Danyelle was still onboard, the *Ronald Reagan* was forward-deployed to the 7th Fleet area of operations in the Yellow Sea in support of security and stability operations in the Indo-Asia-Pacific.

16.    At the time, the *Ronald Reagan* had a Medical Department.

17.    On or about October 3, 2016, the command of the *Ronald Reagan* issued *USS Ronald Reagan* (CVN 76) Notice 5050 ("REAGANNOTE 5050"), which provided for a "pandemic event" style mass vaccination of the more than 3,200 members of the ship's company and the more than 2,400 members of the ship's air wing.

18.    In particular, "REAGANNOTE 5050" required all the 5,600 plus members of the crew of the *Ronald Reagan* to be fully vaccinated with the flu vaccine in three days, with vaccinations being performed between 0830 and 1500 hours each day, or more than 294 vaccinations per hour, as if the ship were actually undergoing a pandemic event.

19.    "REAGANNOTE 5050" also proposed "Patient Flow Through Medical Spaces" as the route for crew members to take through the medical space for their vaccinations. Nearly the

entire medical space of the *Ronald Reagan* had to be utilized for the "pandemic event" vaccination process for crew members from October 4 to October 6, 2016.

20.    Along with "REAGANNOTE 5050", the command of the *Ronald Reagan* also issued a "Standing Order for Administering Influenza Vaccine to Adults, 2016 – 2017" which listed a precaution for the administration of vaccines, for persons with "moderate or severe illness, with or without fever."

21.    The *Ronald Reagan* medical staff started the mass "pandemic event" vaccination earlier than intended, beginning vaccinations on Monday, October 3, 2016, instead of Tuesday, October 4, 2016, as set forth in "REAGANNOTE 5050," apparently to give medical staff additional time to complete all vaccinations by the deadline of October 6, 2016.

22.    That same day, October 3, 2016, Danyelle Luckey was also seriously ill in her rack. She denied sea-sickness but reported fever and nausea.

23.    On Wednesday, October 4, 2016, while still suffering from her sickness and running a fever, Danyelle was taken to the *Ronald Reagan*'s Medical Department for "Active Duty Influenza Vaccine Screening", as detailed in REAGANNOTE 5050.

24.    Danyelle informed the medical personnel in the Medical Department that she was suffering from illness, including a fever.

25.    However, the medical personnel still required Danyelle to receive the influenza vaccination.

26.    Danyelle's vaccination was in violation of the *Ronald Reagan*'s "Standing Order for Administering Influenza Vaccine to Adults, 2016 – 2017."

27.    The medical personnel who vaccinated Danyelle also vaccinated approximately 400 to 500 other crew members that day.

28.    The following day, October 5, 2016, Danyelle's fever continued to worsen, and she was experiencing worsening nausea and vomiting. She required assistance simply to go to the Medical Department.

29.    At the Medical Department, the medical staff was highly dismissive of Danyelle's health concerns, stating that she had seasickness.

30.    Danyelle denied this diagnosis, but the medical personnel did not perform any laboratory tests, including tests of her blood, urine, or sputum, despite Danyelle's serious and worsening illness.

31.    Instead, she was discharged with the simple instruction to drink lots of water.

32.    Danyelle's condition continued to deteriorate the following day, October 6, 2016. Danyelle was once again helped by her bunkmates to the *Ronald Reagan* Medical Department.

33.    By this point, Danyelle was sweating through her clothing because of her high and increasing fever.

34.    The medical staff on duty diagnosed Danyelle as having a fever and an upper respiratory infection from the flu, yet prescribed only ibuprofen, Motrin, Pepto-Bismol, Gatorade, and nausea pills.

35.    This time, however, the medical personnel did give Danyelle a 48-hour sick-in-quarters.

36.    But again, the medical personnel did not perform any laboratory tests, including tests of her blood, urine, or sputum, despite Danyelle's serious and worsening illness.

37.    From October 7, 2016, through the early morning of October 10, 2016, Danyelle's illness caused her to deteriorate so greatly that she lost feeling and control of her legs and could no longer walk unassisted.

38.    During this time, Danyelle, her bunkmates, and her leading petty officer all made repeated efforts to obtain medical attention and care for Danyelle from the medical staff of the *Ronald Reagan.*

39.    However, the medical staff dismissed Danyelle's condition as "just the flu", ordered her back to her bunk, and told her to drink more water and Gatorade.

40.    Once more, the medical personnel did not perform any laboratory tests, including tests of her blood, urine, or sputum, despite Danyelle's serious and worsening illness.

41.    On the morning of October 9, 2016, Danyelle was yet again taken by her bunkmates to the *Ronald Reagan*'s Medical Department because she had fallen on the floor and could no longer walk and had great pain in her legs, to the extent that Danyelle's bunkmates had to lift her legs and feet up the hatchway.

42.    The medical staff, without performing any laboratory tests, including tests of her blood, urine, or sputum, issued Danyelle a 24-hour sick in quarters for "vomiting."

43.    In the evening of October 9, 2016, Danyelle's bunkmates, concerned for her condition, carried her to the Medical Department of the *Ronald Reagan* once more.

44.    The medical staff refused to give Danyelle any treatment in the Medical Department itself, because of concerns about noise and work on the floor.

45.    Later in the evening of October 9, 2016, Danyelle collapsed on the floor near her bunk and was unable to move her legs fully. When called to the scene, the medical staff of the *Ronald Reagan* refused to assist Danyelle to Medical Department, and Danyelle's bunkmates themselves were once more required to carry her there so that she could receive treatment.

46.    In the early morning hours of October 10, 2016, Danyelle was admitted to the Medical Department of the *Ronald Reagan.* However, the medical staff continued to dismiss her

illness as merely a bout of the flu and initially did not perform any laboratory tests, including tests of her blood, urine, or sputum, despite Danyelle's serious and worsening illness.

47.     By 9:30 am that day, Danyelle had developed a dusky, grey color and a lack of sensation in her extremities.

48.     A member of the medical staff who had not previously seen Danyelle became very concerned about her condition. For the first time, the medical staff began testing Danyelle's blood.

49.     The results of the blood tests included no hemoglobin reading, indicating that either the blood draw from the test was faulty or that Danyelle's hemoglobin level had declined to levels inconsistent with human life.

50.     The blood tests also revealed that Danyelle was experiencing liver and kidney failure.

51.     Shortly after the test results were performed, Danyelle began experiencing cardiac arrest.

52.     At this point, the medical staff administered an unknown "resurrection fluid" on Danyelle.

53.     The medical staff was able to briefly resuscitate Danyelle. However, she subsequently suffered another cardiac arrest.

54.     Danyelle Luckey died at approximately 1:35 pm on October 10, 2016.

55.     A Department of Defense autopsy, conducted on October 15, 2016, stated that the cause of Danyelle Luckey's death was sepsis and that the manner of death was natural.

56.     An identical cause of death ("sepsis (natural causes)") was listed on Danyelle's death certificate.

57.    On or about October 24, 2016, Plaintiff requested tissue samples from Danyelle's body to be sent to an independent medical examiner.

58.    On or about November 9, 2016, the Navy determined that Danyelle Luckey died in the line of duty and not owing to her own misconduct.

59.    On or about December 7, 2016, Danyelle's autopsy report was signed.

60.    The autopsy stated: "Prior to her death she was under the care of the ship's medical personnel."

61.    The independent autopsy of Danyelle Luckey's body was not completed until October 24, 2017.

62.    Contrary to the Navy's autopsy and death certificate, the independent autopsy reveled that Danyelle did not die of natural causes, but because of the medical negligence of the medical staff in the *Ronald Reagan*'s Medical Department.

63.    Prior to receiving this autopsy, Plaintiff did not know that Danyelle had died because of the medical negligence of the medical staff in the *Ronald Reagan*'s Medical Department.

64.    On or about January 9, 2020, Plaintiff, together with his wife, filed a claim on behalf of his daughter Danyelle, stating, "We are bringing this wrongful death claim against the US DOD for medical malpractice under the SFC Richard Stayskal Military Medical Accountability Act. This claim is for the wrongful death of Danyelle Luckey for the reasons set forth in the attached complaint attached hereto as Exhibit A, pp. 1-30. Claim is hereby made against the United States and the United States Department of the Navy for the wrongful death of Seaman DANYELLE LUCKEY, ("the decedent") who died on October 10, 2016 aboard the USS Ronald Reagan, who was deprived of any meaningful medical care and treatment for six (6) days and was wrongfully

subjected to extreme pain, mental distress and anguish, and was further subjected to wrongful medical neglect, medical abandonment and medical malpractice, as more fully set forth in the complaint attached hereto as Exhibit A, pp. 1-30. The parents of the decedent also make claim hereunder for the infliction of mental distress by the wrongful acts and omissions of agents, employees, and subcontractors of the US Navy as more fully set forth in the complaint attached hereto as Exhibit A, pp. 1-30."

65.     This claim was filed on a completed SF-95 form and addressed to the Department of the Navy, Office of the Judge Advocate General, Tort Claims Unit Norfolk, 9620 Maryland Avenue, Suite 205, Norfolk, Virginia, 23511-2949.

66.     On or about March 4, 2020, the Office of the Judge Advocate General, Tort Claims Unit Norfolk, acknowledged receipt of the Plaintiff's claim by letter.

67.     On or about August 18, 2021, the Office of the Judge Advocate General, Tort Claims Unit Norfolk sent the Plaintiff a letter containing the Initial Determination of the Plaintiff's claim brought on behalf of their deceased daughter, Danyelle.

68.     The Initial Determination denied the Plaintiff's claim brought on behalf of Danyelle and declined to grant any relief, stating, "Your claim fails to state a claim cognizable under 10 U.S.C. § 2733a and its implementing regulation. Pursuant to 32 C.F.R. § 45.2(c)(2) there is a three year statute of limitations for claims filed in 2020. Your claim is not cognizable because it was not filed within the applicable statute of limitations. Any claim arising from the incident of October 10, 2016, bad to be filed with the Department of the Navy no later than three years from that date. Since your claim was filed on January 14, 2020, it is untimely. In addition, the claim is not cognizable because the medical care at issue was not provided at a covered Military Treatment Facility. 32 C.F.R. § 45.5(b). For the foregoing reasons, the claim is denied."

69.    Plaintiff appealed the Initial Determination to the Defense Health Agency. This appeal was filed on or about October 4, 2021.

70.    In this appeal, the Plaintiff set forth specific facts and arguments to rebut the Office of the Judge Advocate General, Tort Claims Unit Norfolk's determinations that he had failed to state a claim because 1) his claim was untimely under 32 C.F.R. § 45.2(c)(2) and 2) that the medical care at issue was not provided at a covered Military Treatment Facility under 32 C.F.R. § 45.5(b).

71.    Specifically, Plaintiff argued that 32 C.F.R. § 45's discovery rule provides that a claim does not accrue until claimant knew, or with the exercise of reasonable diligence should have known, of the injury and that malpractice was its possible cause, and that the Plaintiff had not learned that malpractice was the cause of Danyelle's death until October 24, 2017. Plaintiff further argued that 32 C.F.R. § 45 provides for three year statute of limitations for claims filed in the calendar year 2020. Therefore, Plaintiff's claim filed on or about January 9, 2020, was timely.

72.    Plaintiff further argued that the *Ronald Reagan* was equipped with uniformed U.S. Navy healthcare providers who were acting within the scope of their employment as medical care providers onboard the ship, that these healthcare providers were equipped with medical knowledge, resources, and equipment to enable them to conduct their duties in providing reasonably competent medical care to all those that were onboard the ship, that the *Ronald Reagan* had a designated medical area and that the ship's medical staff were holding themselves out as providing medical care within this medical area. Plaintiff further argued that this medical area met the general definition of a medical treatment facility, which is a facility established for the purpose of furnishing medical care. Plaintiff further argued that if such a treatment facility was not considered a military medical treatment facility for the purposes of a 10 U.S.C. 2733a(a) claim,

this would be unduly prejudicial to the deceased, and that the absence of such a facility onboard the *Ronald Reagan* would be a violation of servicemembers' rights in its own right.

73.     On or about February 16, 2022, the Defense Health Agency issued a Final Determination Letter denying the Plaintiff's claim: "In accordance with United States Code, Title 10, Section 2733a and Code of Federal Regulations, Title 32, Part 45, and after a thorough review of Mr. Luckey's appeal and the written record, the Military Medical Malpractice Claims Appeals Board voted and adopts the Navy finding the claim fails to state a claim cognizable under 10 U.S.C. § 2733a and its implementing regulation because the claim was not received by the Department of Defense in writing within three years after the claim accrued as required by United States Code, Title 10, Section 2733a(b)(4) and Code of Federal Regulations, Title 32, Section 45.2(c)(2). In addition, the Navy properly determined the claim was not cognizable because the medical care at issue was not provided at a covered Military Treatment Facility. 32 C.F.R. § 45.5(b)(2). Therefore, the appeal is denied."

### *Plaintiff's First Claim*

**Violation of 5 U.S.C. § 706 (2)(A), (2)(B), and (2)(D) – The Defense Health Agency, in Violation of 32 C.F.R. §45.2(c)(3)(ii), Declined to Apply the Discovery Rule to the Plaintiff's Claim.**

74.     The allegations of the preceding paragraphs are incorporated by reference as if fully stated herein.

75.     Federal courts have the obligation to "hold unlawful and set aside" any agency action which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law…contrary to constitutional right…[or] without observance of procedure required by law." 5 U.S.C. § 706 (2)(A), (2)(B), (2)(D).

76.     The Fifth Amendment provides that "[n]o person shall be…deprived of life, liberty, or property, without due process of law." U.S. Const., amend V.

77.     An agency may violate procedural due process rights by departing from its own regulation if that regulation provides parties before the agency with procedural protections. *See Lopez v. Fed. Aviation Admin.*, 318 F.3d 242, 247 (D.C. Cir. 2003) (cited as applying in a 10 U.S.C. § 2733a(a) context by *Larumbe*, 2023 WL 7156529 at *3).

78.     10 U.S.C. § 2733a(b)(4) requires that a claim brought under 10 U.S.C. § 2733a(a) be received by the Department of Defense in writing within two years after the claim accrues.

79.     However, under 10 U.S.C. § 2733a(g)(1), the Secretary of Defense shall prescribe regulations to implement claims brought under 10 U.S.C. § 2733a(a). Such regulations prescribed by the Secretary of Defense "shall include…Policies and procedures to ensure the timely, efficient, and effective processing and administration of claims under this section, including the filing, receipt, investigation, and evaluation of a claim;…[and] such other matters relating to the processing and administration of a claim, including an administrative appeals process, as the Secretary considers appropriate." *See* 10 U.S.C. § 2733a(g)(2)(A)(i), (iii).

80.     Both 10 U.S.C. § 2733a(b)(4) and (g)(1) thus codify procedural protections enjoyed by those who bring claims against the Secretary of Defense under 10 U.S.C. § 2733a(a)

81.     Pursuant to the authority granted to the Secretary of Defense under 10 U.S.C. § 2733a(g)(2)(A)(i), (iii), the Secretary of Defense promulgated rules which allowed claimants a three-year statute of limitations for claims filed in the calendar year 2020. *See* 32 C.F.R. §45.2(c)(2): "There is a special rule for claims filed during calendar year 2020. Such claims must be presented to DoD in writing within three years after the claim accrues."

82. The Secretary of Defense also applied a discovery rule to all claims brought under 10 U.S.C. § 2733a(a). *See* 32 C.F.R. §45.2(c)(3)(ii): "For purposes of applying the time limit for filing a claim, a claim accrues as of…The date on which the claimant knew, or with the exercise of reasonable diligence should have known, of the injury and that malpractice was its possible cause."

83. Therefore, under 32 C.F.R. §45.2(c)(3)(ii), the statutory period to file a claim does not begin to run until a claimant both 1) knows, or should have known, of the injury and 2) knows that malpractice was its possible cause.

84. Danyelle Luckey, the Plaintiff's daughter, died because of the negligence of medical personnel onboard the *Ronald Reagan* on or about October 10, 2016.

85. While the Plaintiff learned about Danyelle's death shortly thereafter, Plaintiff did not know that medical malpractice was the cause of his daughter's death until October 24, 2017, when an independent medical autopsy confirmed that Danyelle Luckey had not died of natural causes but of medical negligence.

86. Plaintiff was unaware that Danyelle had died from medical negligence because the Department of Defense falsely represented to the Plaintiff on multiple occasions, most notably in Danyelle's autopsy and on her death certificate, that the cause and manner of Danyelle's death had been natural.

87. Therefore, Plaintiff's discovery that his daughter died of medical malpractice on October 24, 2017, was the date upon which he actually knew, or in the exercise of reasonable diligence should have known, that Danyelle died, and that malpractice was the cause.

88.    Plaintiff filed his claim on January 9, 2020. Under 32 C.F.R. §45.2(c)(2): "There is a special rule for claims filed during calendar year 2020. Such claims must be presented to DoD in writing within three years after the claim accrues."

89.    Because Plaintiff did not learn of the negligence of the medical staff of the *Ronald Reagan* until October 24, 2017, his claim did not accrue until October 24, 2020, months after the Plaintiff actually filed his claim. *See* 32 C.F.R. §45.2(c)(3)(ii): "For purposes of applying the time limit for filing a claim, a claim accrues as of…The date on which the claimant knew, or with the exercise of reasonable diligence should have known, of the injury and that malpractice was its possible cause."

90.    Therefore, under 32 C.F.R. §45.2(c)(2), (c)(3)(ii), Plaintiff's claim was timely filed.

91.    Yet the Defense Health Agency, when deciding the Plaintiff's claim, violated 32 C.F.R. §45.2 (c)(3)(ii) by declining to apply the discovery rule to the Plaintiff's claim: "In accordance with United States Code, Title 10, Section 2733a and Code of Federal Regulations, Title 32, Part 45, and after a thorough review of Mr. Luckey's appeal and the written record, the Military Medical Malpractice Claims Appeals Board voted and adopts the Navy finding the claim fails to state a claim cognizable under 10 U.S.C. § 2733a and its implementing regulation because the claim was not received by the Department of Defense in writing within three years after the claim accrued as required by United States Code, Title 10, Section 2733a(b)(4) and Code of Federal Regulations, Title 32, Section 45.2(c)(2)."

92.    The Defense Health Agency's failure to apply 32 C.F.R. §45.2 (c)(3)(ii) was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2)(A).

93.     The Defense Health Agency's decision failure to apply 32 C.F.R. §45.2 (c)(3)(ii) also violated Plaintiff's Fifth Amendment due process rights and thus was "contrary to constitutional right." 5 U.S.C. § 706 (2)(B).

94.     In addition, the Defense Health Agency's failure to apply 32 C.F.R. §45.2 (c)(3)(ii) was "without observance of procedure required by law." 5 U.S.C. § 706 (2)(D).

### *Plaintiff's Second Claim*

**Violation of 5 U.S.C. § 706(2)(A), (2)(B), and (2)(C) – By Enacting 32 C.F.R. §45.5(b)(2), the Secretary of Defense Has Promulgated Regulations Which Defy the Plain Text of 10 U.S.C. § 1073d, Depriving Plaintiff of His Due Process Rights.**

95.     The allegations of the preceding paragraphs are incorporated by reference as if fully stated herein.

96.     Federal courts have the obligation to "hold unlawful and set aside" any agency action which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law…contrary to constitutional right…[or] short of statutory right." 5 U.S.C. § 706(2)(A), (2)(B), (2)(C).

97.     The Fifth Amendment provides that "[n]o person shall be…deprived of life, liberty, or property, without due process of law." U.S. CONST., AMEND V.

98.     "An agency cannot issue regulations and directives which are inconsistent with an act of Congress." *Younger v. Turnage*, 677 F. Supp. 16, 22 (D.D.C. 1988); *see also Envtl. Def. Fund v. EPA*, 922 F.3d 446, 457 (D.C. Cir. 2019) ("A regulation can never trump the plain meaning of a statute" (cleaned up)).

99.     As described *supra,* 10 U.S.C. § 2733a(a) permits the Secretary of Defense to "allow, settle, and pay a claim against the United States for personal injury or death incident to the

service of a member of the uniformed services that was caused by the medical malpractice of a Department of Defense health care provider."

100.    10 U.S.C. § 2733a(b)(1-6) enumerates six requirements under which a claim may be "allowed, settled, and paid" under 10 U.S.C. § 2733a(a).

101.    The third requirement for a claim to be allowed, settled, and paid under 10 U.S.C. § 2733a(a) is that the claim must be brought for an "act or omission" which "occurred in a covered military medical treatment facility." 10 U.S.C. § 2733a(b)(3).

102.    The term "covered military medical treatment facility", as used in 10 U.S.C. § 2733a(b)(3), has the same definition as the term does in 10 U.S.C. § 1073d. *See* 10 U.S.C. § 2733a(j)(1): "The term "covered military medical treatment facility" means a facility described in subsection (b), (c), or (d) of section 1073d of this title."

103.    10 U.S.C. § 1073d(a) provides: "To support the medical readiness of the armed forces and the readiness of medical personnel, the Secretary of Defense, in consultation with the Secretaries of the military departments, shall maintain the military medical treatment facilities described in subsections (b), (c), and (d)."

104.    10 U.S.C. § 1073d(c)(1) provides: "The Secretary of Defense shall maintain hospitals in areas where civilian health care facilities are unable to support the health care needs of members of the armed forces and covered beneficiaries."

105.    Nowhere in the text of 10 U.S.C. § 1073d are ships exempted from the Secretary's duty to maintain the military medical treatment facilities described in subsections (b), (c), and (d) of 10 U.S.C. § 1073d.

106.    On October 3, 2016, through October 10, 2016, the *Ronald Reagan* was in international waters in the Yellow Sea.

107.    Based on its location at the time, "civilian health care facilities" were "unable to support the health care needs" of the nearly 5,600 servicemembers deployed aboard the *Ronald Reagan*. *See* 10 U.S.C. § 1073d(c)(1).

108.    The Secretary of Defense was therefore required to maintain a hospital onboard the *Ronald Reagan*. *See* 10 U.S.C. § 1073d(c)(1).

109.    And in fact, the *Ronald Reagan* was equipped with uniformed U.S. Navy healthcare providers who possessed medical knowledge, resources, and equipment to enable them to conduct their duties in providing competent medical care to all those onboard the ship. These health care providers had a designated medical area (the Medical Department) and were holding themselves out as providing medical care in this designated medical area.

110.    10 U.S.C. § 2733a defines a "covered military medical treatment facility" as "a facility described in [10 U.S.C. § 1073d]." 10 U.S.C. § 2733a(j)(1).

111.    However, while Department of Defense regulations largely mirror this definition (*see* 32 C.F.R. §45.5(b)(1), "For the purposes of this regulation, an MTF is a medical center, inpatient hospital, or ambulatory care center, as those facilities are described in 10 U.S.C. 1073d"), the Secretary of Defense has exempted "ships" from locations which are inclusive of a military medical treatment facility from the Department of Defense regulations governing claims brought under § 10 U.S.C. 2733a(a). *See* 32 C.F.R. §45.5(b)(2): "A claim may not be based on health care services provided by DoD health care providers in any other location, such as…ships."

112.    Had Congress intended that servicemembers onboard ships be exempted from bringing claims under 10 U.S.C. 2733a(a), it would have said so. But it did not. *See* 10 U.S.C. § 2733a(a), (b)(1-6), (j)(1); 10 U.S.C. § 1073d.

113.    Plaintiff's claim under 10 U.S.C. § 2733a(a) was denied by the Defense Health Agency because "the Navy properly determined the claim was not cognizable because the medical care at issue was not provided at a covered Military Treatment Facility. 32 C.F.R. § 45.5(b)(2)."

114.    Although the denial letter did not explicitly state that Plaintiff's claim was denied because Danyelle Luckey died onboard a ship, when considered together the facts surrounding Danyelle's death, the language of the denial letter, and the language of 32 C.F.R. § 45.5(b)(2) all lead inescapably to that conclusion.

115.    By enacting 32 C.F.R. § 45.5(b)(2), which bars servicemembers and their authorized representatives from bringing a claim which arises onboard a ship under 10 U.S.C. § 2733a(a), the Secretary of Defense violated Plaintiff's Fifth Amendment due process rights and thus acted "contrary to constitutional right." 5 U.S.C. § 706 (2)(B).

116.    The Secretary of Defense's decision to enact 32 C.F.R. § 45.5(b)(2) was also "short of statutory right."  5 U.S.C. § 706 (2)(C).

117.    Finally, the Secretary of Defense's decision to enact 32 C.F.R. § 45.5(b)(2) was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2)(A).

### *Plaintiff's Third Claim*

**Violation of 5 U.S.C. § 706(2)(A), (2)(B), (2)(C) – By Applying 32 C.F.R. §45.5(b)(2) to Plaintiff's Claim, the Defense Health Agency Made a Decision Contrary to Law and Violative of Plaintiff's Due Process Rights.**

118.    The allegations of the preceding paragraphs are incorporated by reference as if fully stated herein.

119.    Federal courts have the obligation to "hold unlawful and set aside" any agency action which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law…contrary to constitutional right…[or] short of statutory right." 5 U.S.C. § 706(2)(A), (2)(B), (2)(C).

120.    The Fifth Amendment provides that "[n]o person shall be…deprived of life, liberty, or property, without due process of law." U.S. CONST., AMEND V.

121.    "An agency cannot issue regulations and directives which are inconsistent with an act of Congress." *Younger,* 677 F. Supp. at 22; *see also Envtl. Def. Fund*, 922 F.3d at 457 ("A regulation can never trump the plain meaning of a statute.")

122.    As detailed *supra,* the Secretary of Defense has exempted ships from 32 C.F.R. § 45.5(b)(2), the enabling regulation of 10 U.S.C. 2733a, in violation of Congressional action. *See* 10 U.S.C. § 2733a(a), (b)(1-6), (j)(1); 10 U.S.C. § 1073d.

123.    Plaintiff's claim under 10 U.S.C. § 2733a(a) was denied by the Defense Health Agency because "the Navy properly determined the claim was not cognizable because the medical care at issue was not provided at a covered Military Treatment Facility. 32 C.F.R. § 45.5(b)(2)."

124.    Although the denial letter did not explicitly state that Plaintiff's claim was denied because Danyelle Luckey died onboard a ship, when considered together the facts surrounding Danyelle's death, the language of the denial letter, and the language of 32 C.F.R. § 45.5(b)(2) all lead inescapably to that conclusion.

125.    The Defense Health Agency's decision therefore violated 10 U.S.C. § 2733a, and thus was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2)(A).

126.    In the alternative, the Defense Health Agency's decision violated 10 U.S.C. § 2733a, and thus was "short of" Plaintiff's "statutory right." 5 U.S.C. § 706 (2)(C).

127.    The Defense Health Agency's decision also deprived Plaintiff of his due process rights and was therefore "contrary to constitutional right." 5 U.S.C. § 706(2)(B).

### Prayer for Relief

WHEREFORE, Plaintiff prays that judgment be entered:

(a) finding that, for any or all the reasons enumerated *supra,* the Defense Health Agency's denial of Plaintiff's appeal improperly failed to apply 32 C.F.R. §45.2 (c)(3)(ii) to Plaintiff's claim; and,

(b) finding that by enacting 32 C.F.R. § 45.5(b)(2), the Secretary of Defense violated Plaintiff's Fifth Amendment due process rights and thus acted in a manner "contrary to constitutional right," 5 U.S.C. § 706 (2)(B), as well as "short of statutory right" and "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706 (2)(A), (2)(C); and,

(c) finding that, for any or all the reasons enumerated *supra,* the Defense Health Agency's denial of Plaintiff's appeal therefore improperly applied 32 C.F.R. § 45.5(b)(2) to Plaintiff's claim; and,

(d) Remanding the Plaintiff's appeal to the Defense Health Agency for a new review on the merits which properly applies 32 C.F.R. §45.2 (c)(3)(ii) to the Plaintiff's claim and properly conforms to the requirements of 10 U.S.C. 2733a; and,

(e) Finding that the Plaintiff is the "prevailing party" as that term is defined in 28 U.S.C. § 2412 (a)(1) and (b), and finding that the position of the Secretary of Defense and the Defense Health Agency is not "substantially justified" as that term is defined in 28 U.S.C. § 2412 (d)(1)(A), and awarding costs and the reasonable expenses of fees and attorneys to the Plaintiff; and,

(f)  any other and further relief as the Court may deem, in the circumstances, be just and

proper.

Dated January 31, 2025.                      Respectfully submitted,

_/s/David P. Sheldon_
David P. Sheldon
DC Bar No. 446039
Law Offices of David P. Sheldon, P.L.L.C.
100 M Street, S.E., Suite 600
Washington, DC  20003
Tel: 202.546.9575
Fax: 202.546.0135
_Attorney for Plaintiff_