UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DERRICK LUCKEY,

        *Plaintiff*,

v.

PETER B. HEGSETH et al.,

        *Defendants*.

Civil Action No. 25-299 (TJK)

**MEMORANDUM OPINION**

Plaintiff's daughter Danyelle Luckey was a seaman who, just a few months after her service in the Navy began, became ill and died on the forward-deployed *USS Ronald Reagan*. Plaintiff filed a wrongful death claim with the Navy, which was denied, and his appeal of that decision was denied too. Plaintiff now sues the Secretary of Defense and the Department of Defense Health Agency, seeking review of the denial of his wrongful death claim. Defendants move to dismiss, arguing that the Court lacks subject matter jurisdiction because the Military Claims Act bars judicial review and that in any event, Plaintiff has failed to state a claim. The Court agrees that the Military Claims Act bars judicial review of Plaintiff's claims, so it will grant Defendants' motion and dismiss the case for lack of subject-matter jurisdiction. This decision will be cold comfort for Plaintiff, even if it is what the Court understands the law to require. Still, the Court thanks Plaintiff for his daughter's service and her willingness to serve our Nation.

**I.    Background**

    **A.    Factual Background**

According to the complaint, Danyelle Luckey became ill on or around October 3, 2016, suffering from fever and nausea, while serving aboard the *USS Ronald Reagan* in the Indo-Asia-Pacific. ECF No. 16 ("Compl.") ¶¶ 13–15, 22. At about that time, the *USS Ronald Reagan* began

a "'pandemic event' style mass vaccination," aiming to administer over 5,600 influenza vaccines to servicemembers onboard within three days. *Id.* ¶¶ 17–18. Luckey was taken to the medical department to be vaccinated where she "informed the medical personnel . . . that she was suffering from illness, including a fever." *Id.* ¶¶ 23–24. Still, she was required to receive the vaccine, despite onboard guidelines advising precautions for administering them to persons with moderate or severe illness. *Id.* ¶¶ 20, 24–25.

Luckey's illness worsened over the following days. Compl. ¶ 28. She visited the ship's medical department on October 5 and 6—requiring assistance from her bunkmates to reach it—and reported a high fever and increased nausea and vomiting, but Plaintiff alleges that the medical staff was "highly dismissive" of her illness. *Id.* ¶¶ 28–33. She was twice sent back to her bunk and given only over-the-counter medication and Gatorade. *Id.* ¶¶ 31–35. Over the next four days, Luckey's condition further deteriorated, and she "lost feeling and control of her legs and could no longer walk unassisted." *Id.* ¶ 37. Medical staff dismissed her illness as "'just the flu'" and told her to stay in her bunk and continue drinking fluids. *Id.* ¶ 39. Luckey's bunkmates twice more accompanied her to the medical department, having to carry her because she could not walk unassisted. *Id.* ¶¶ 43, 45. Medical staff finally admitted her in the early morning hours of October 10. *Id.* ¶ 46. A few hours later, she allegedly "had developed a dusky, grey color and a lack of sensation in her extremities." *Id.* ¶ 47. Blood tests, taken for the first time, showed that her liver and kidneys were failing. *Id.* ¶¶ 48, 50. Luckey soon suffered a cardiac arrest, was briefly resuscitated, but died that same day. *Id.* ¶¶ 51, 53–54. A Department of Defense autopsy listed her cause of death as sepsis. *Id.* ¶ 55. But an independent autopsy completed at Plaintiff's request in October 2017 concluded that the cause was medical negligence. *Id.* ¶¶ 61–62.

**B.     Procedural Background**

In January 2020, Plaintiff and his wife filed a wrongful death claim with the Department

of the Navy, claiming that their daughter's death was caused by medical malpractice. Compl. ¶ 64. The Navy denied the claim the following year. *See id.* ¶ 67. The Navy's denial letter stated that the claim was not cognizable because Plaintiff's daughter was not treated at a "covered Military Treatment Facility" under the Military Claims Act ("MCA"). *Id.* ¶¶ 67–68; *see* 32 C.F.R. § 45.5(b). It also stated that the claim had been filed outside the three-year statute of limitations in the agency's regulation. Compl. ¶ 67; *see* 32 C.F.R. § 45.2(c)(2).

Plaintiff appealed the Navy's initial determination to the appeals board of the Defense Health Agency. Compl. ¶ 69. He argued that the *USS Ronald Reagan* contained a sophisticated medical department which fit the statutory definition of a "covered Military Treatment Facility." *See id.* ¶¶ 70, 72. Thus, he argued, the Department's regulations exempting certain facilities, including those on ships, directly contradicted the statutory text. *See id.* ¶ 72. He also asserted that his claim was timely, and that the Navy had used the incorrect accrual date to start the three-year statute of limitations period. *Id.* ¶¶ 68, 70–71. The agency's regulation at 32 C.F.R. § 45.2(c)(3) defines a claim's accrual date as the latter of either "[t]he date of the act or omission . . . that is the basis of the malpractice claim" or "[t]he date on which the claimant knew, or with the exercise of reasonable diligence should have known, of the injury and that malpractice was its possible cause." Plaintiff argued that, because he did not know that malpractice was the cause of his daughter's death until he received the results of the independent autopsy in late 2017, his claim was within the statute of limitations when he brought it in January 2020. Compl. ¶¶ 70–71.

In February 2022, the Defense Health Agency's appeals board upheld the Navy's finding and issued a final determination denying Plaintiff's claim. Compl. ¶ 73. It asserted that it had undergone "a thorough review of [Plaintiff's] appeal and the written record" but had "adopt[ed] the Navy finding the claim fails to state a claim cognizable under 10 U.S.C. § 2733a and its implementing regulation." *Id.* The appeals board found that "the Navy properly determined the

3

claim was not cognizable because the medical care at issue was not provided at a covered Military Treatment Facility." *Id.* The appeals board also found that "the claim was not received by the Department of Defense in writing within three years after the claim accrued" and was therefore untimely. *Id.*

In January 2025, Plaintiff sued the Secretary of Defense and the Defense Health Agency for violating the Administrative Procedure Act and the Due Process Clause of the Fifth Amendment. Compl. ¶¶ 95–127. He seeks review of the agency's decision to deny his wrongful death claim, arguing that the agency wrongfully determined that the *USS Ronald Reagan* was not a covered military medical treatment facility and impermissibly failed to apply its regulations governing when his claim accrued. *Id.* at 22–23 (Prayer for Relief). He asks the Court to set aside the agency's denial of his claim and remand his case for a new decision. *Id.*

Defendants move to dismiss under Federal Rules of Civil Procedure Rules 12(b)(1) and 12(b)(6), arguing that the Court lacks subject matter jurisdiction because the MCA bars judicial review and that in any event, Plaintiff failed to state a claim. ECF No. 17. For reasons explained below, the Court agrees that the MCA bars judicial review, and so it lacks subject-matter jurisdiction.

## II.  Legal Standard

"Federal [district] courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Under Rule 12(b)(1), the plaintiff has the burden to establish the Court's subject-matter jurisdiction. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). In evaluating such a motion, the Court must "assume the truth of all material factual allegations in the complaint and . . . grant[ the] plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*,

4

642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up). "However, those factual allegations receive closer scrutiny than they do in the Rule 12(b)(6) context," and the Court "may look to documents outside of the complaint in order to evaluate whether or not it has jurisdiction to entertain a claim." *Doe v. Wash. Metro. Area Transit Auth.*, 453 F. Supp. 3d 354, 361 (D.D.C. 2020) (internal quotation marks and citations omitted).

### III.  Analysis

The MCA allows the Secretary of Defense to settle claims for property damage, personal injury, or death caused by military members. 10 U.S.C. § 2733. In 2019, the statute was expanded through the Military Medical Accountability Act to also include claims for personal injury or death "caused by the medical malpractice of a Department of Defense health care provider." *Id.* § 2733a(a). Under the MCA, to "settle" means to "consider, ascertain, adjust, determine, and dispose of a claim, whether by full or partial allowance or by disallowance." *Id.* § 2731. The Secretary of Defense has also prescribed regulations to implement the statute, as it authorizes. *Id.* § 2733a(h)(1). He delegated the authority to make initial determinations on claims to the relevant components of Department of Defense, *see* 32 C.F.R. § 45.12, and the authority to hear appeals of those determinations to an appeals board within the Defense Health Agency, *see id.* § 45.13(b). Important here, the statute also contains a finality provision: "[n]otwitstanding any other provision of law, the settlement of a claim under . . . [the MCA] is final and conclusive." 10 U.S.C. § 2735.

Plaintiff does not dispute that the decision of the Defense Health Agency denying his claim constitutes a final "settlement" of that claim under the MCA, which would ordinarily bar judicial review. However, the parties disagree on whether an exception to the finality provision exists that allows judicial review in some cases, and if so, whether it applies here.

Plaintiff points to *Broadnax v. U.S. Army*, 710 F.2d 865 (D.C. Cir. 1983), as support for his argument that the Court may review his claims. *See* Compl. ¶ 4. In *Broadnax*, the Circuit

5

recognized that the MCA's finality provision "bars judicial review." 710 F.2d at 867. But it also noted, in dicta, that § 2735 "may well permit some limited review, for example where there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination." *Id.* (internal quotation marks and citations omitted). The Court will "assume without deciding that an exception to the MCA's finality provision exists" akin to the test set out in *Broadnax*. *Petitfrere v. Austin*, No. 22-cv-1819 (RCL), 2023 WL 5348748, at *4 (D.D.C. Aug. 21, 2023). Specifically, the Court will assume that the exception includes the violation of a clear statutory mandate and a plaintiff's constitutional rights that otherwise meet the *Broadnax* criteria. *Id.* That said, Plaintiff has not met his burden of showing that such an exception would apply in his case such that the Court would have jurisdiction.

### A. Plaintiff Has Not Shown That Defendants Violated a Clear Statutory Mandate Such That a Potential Exception to the MCA's Finality Provision Applies

Plaintiff first argues that the agency violated a clear statutory mandate when it enacted and applied to Plaintiff's claim a regulation that excludes medical care provided on ships or deployed settings from coverage under the MCA. Unfortunately for Plaintiff, he does not come close to making this showing.

The MCA states that medical malpractice claims may only be brought for medical care received "in a covered military medical treatment facility." 10 U.S.C. § 2733a(b)(3). It defines "covered military medical treatment facility" in reference to the descriptions found in §§ 1073d(b), (c), and (d). *Id.* § 2733a(k)(1). Section 1073d, in turn, provides that the Secretary of Defense must maintain three types of military medical treatment facilities: he shall "maintain *medical centers* in areas with a large population of members of the armed forces and covered beneficiaries"; "*hospitals* in areas where civilian health care facilities are unable to support the health care needs of

6

members of the armed forces and covered beneficiaries"; and "*ambulatory care centers* in areas where civilian health care facilities are able to support the health care needs of members of the armed forces and covered beneficiaries." *Id.* §§ 1073d(b)–(d) (emphasis added). The statute further specifies the level and type of care each facility shall provide. *See generally id.*

The implementing regulations for medical malpractice claims under the MCA, like the statute itself, define a covered military medical treatment facility in reference to the descriptions of facilities in 10 U.S.C. § 1073d. 32 C.F.R. § 45.5(b)(1). And the regulations further specify that "[a] claim may not be based on health care services provided by [agency] health care providers in any other location, such as in the field, battalion aid stations, ships, planes, [or] deployed settings." *Id.* § 45.5(b)(2).

Plaintiff has not come close to showing that Defendants violated a clear statutory mandate by enacting and applying regulations that exclude the medical department on the *USS Ronald Reagan* from the definition of a covered military medical treatment facility under the MCA. Plaintiff alleges that at the time of her death, his daughter was serving on the *USS Ronald Reagan* in the "Yellow Sea," as it forward deployed "in support of security and stability operations in the Indo-Asia-Pacific." Compl. ¶ 15. She received care in the ship's "designated medical area," which was "equipped with uniformed U.S. Navy healthcare providers who possessed medical knowledge, resources, and equipment." *Id.* ¶ 109. It is straightforward that the medical department on the *USS Ronald Reagan* was not a "covered medical treatment facility" as that term is described in 10 U.S.C. §§ 1073d(b), (c), and (d). It was not a "medical center" under § 1073d(b) because it was not established in an "area[] with a large population of member of the armed forces and covered beneficiaries." 10 U.S.C. § 1073d(b)(1). Nor does a forward-deployed ship's medical department serve as a "referral facilit[y] for members and covered beneficiaries who require comprehensive health care services that support medical readiness" as the statute requires for a medical center.

7

*Id.* § 1073d(b)(2). More broadly, the statute's drafters recognized that both military members *and covered beneficiaries* would receive care at covered medical treatment facilities because the facilities are described in relation to the available civilian healthcare facilities in the area. This strongly suggests that the *USS Ronald Reagan*'s medical department, deployed on the other side of the world, was also not a "hospital" or "ambulatory care center" under the statute. *See id.* §§ 1073d(c)–(d).

It makes sense then, that the implementing regulations would exclude medical care provided "in any other location, such as in the field, battalion aid stations, *ships*, planes, [or] deployed settings"—such as the *USS Ronald Reagan*. 32 C.F.R. § 45.5(b)(2) (emphasis added). None of these settings—and especially not a forward-deployed ship such as the *USS Ronald Reagan*—are positioned to serve as a military medical treatment facility described in 10 U.S.C. § 1073d. In the end, if anything, it would violate a clear statutory mandate for the regulations to have *included* the ship's medical department as a covered military medical treatment facility under the regulations, rather than to have *excluded* it.

Still, Plaintiff argues the *USS Ronald Reagan*'s medical department was a "hospital" under 10 U.S.C. § 1073d(c). ECF No. 18 at 20–21. He reads § 1073d to mean that "if civilian health care facilities are unable to support the health care needs of members of the armed forces and covered beneficiaries onboard a ship, then the Secretary of Defense is required to maintain a hospital in that area, i.e. on board the ship." *Id.* at 21 (cleaned up). This interpretation strains credulity, to say the least. As noted above, the statutory context is clear that a "hospital" under 10 U.S.C. § 1073d(c) is a facility that supports the health care needs of covered beneficiaries, not merely members of the armed forces. Thus, it makes no sense that the term would include the medical department of the forward-deployed *USS Ronald Reagan*, because covered beneficiaries do not and could not receive care there. Nor does it make sense for the statute to require a "hospital"

8

onboard every ship merely because "civilian health care facilities" cannot support the needs of the military personnel aboard it. And such a reading would provide an unreasonable constraint on the Department of Defense—whose soldiers, sailors, and Marines often must venture beyond areas served by civilian health care services without maintaining a "hospital" with them at all times—that apparently no one ever anticipated.

For all these reasons, Plaintiff has not met his burden of showing that Defendants violated a clear statutory mandate by enacting and applying regulations that exclude from coverage under the MCA the care that his daughter received onboard the *USS Ronald Reagan*. Thus, this potential exception to the finality provision is not available to him.

### B. Plaintiff Has Not Shown That Defendants Violated Plaintiff's Constitutional Due Process Rights Such That a Potential Exception to the MCA's Finality Provision Applies

Second, Plaintiff argues that the agency's two enumerated reasons for denying his claim—that the *USS Ronald Reagan* was not a covered military medical treatment facility and that his claim was not timely—constitute violations of his procedural due process rights under the Fifth Amendment, such that they too trigger an exception to the MCA's finality provision. Again, neither works.

Procedural due process claims are evaluated in two steps: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted). In weighing whether an alleged constitutional due process violation occurred, courts consider "the private interest that will be affected by the official action," "the risk of an erroneous deprivation of such interest through the procedures used," and "the Government's interest." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). "Due process ordinarily requires that procedures provide notice of the proposed

9

official action and 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Ralls Corp. v. CFIUS*, 758 F.3d 296, 318 (D.C. Cir. 2014) (quoting *Mathews*, 424 U.S. at 333).

Plaintiff's first argument merely repackages his "clear statutory mandate" claim: he asserts that the agency violated his constitutional due process rights by carving out the *USS Ronald Reagan*'s medical department from the definition of covered military medical treatment facility, thereby violating a clear statutory mandate. Compl. ¶¶ 95–117. This argument fails for reasons the Court has already explained.

Plaintiff's second argument is that the agency failed to apply its own regulations when reviewing his claim. He asserts that it ignored the claim accrual rule codified in its regulations at 32 C.F.R. § 45.2(c)(3) when it concluded that his claim accrued on the date his daughter died, and so was not timely received within three years. *See* Compl. ¶¶ 77, 91. To repeat, that regulation defines a claim's accrual date as the latter of either "[t]he date of the act or omission . . . that is the basis of the malpractice claim" or "[t]he date on which the claimant knew, or with the exercise of reasonable diligence should have known, of the injury and that malpractice was its possible cause." 32 C.F.R. § 45.2(c)(3). Plaintiff asserts that he "was unaware that [his daughter] had died from medical negligence" until he received the independent autopsy results, so his claim accrued on October 24, 2017. Compl. ¶¶ 86–87. In failing to apply its regulations to correctly set the accrual date in late 2017, Plaintiff argues, the agency impermissibly denied him a constitutional procedural safeguard he was due. *See id.* ¶ 77.

Even assuming that an agency can violate a claimant's constitutional rights by not applying its own regulations along these lines, Plaintiff has not met his burden of showing that is what happened here, such that this claim triggers a potential exception to the finality provision.

To begin, Plaintiff received the standard procedural protections due to claimants before the agency. He concedes that he had the chance to first have his claim heard by the Navy and then to

10

appeal to the Defense Health Agency's appeals board. *Id.* ¶¶ 68–70. He also admits that in his appeal he had the opportunity to "set forth specific facts and arguments to rebut" the Navy's initial determination. *Id.* ¶ 70. In its final determination, the Defense Health Agency's appeals board stated that it came to its decision after a full review of Plaintiff's appeal—which included his argument that his claim did not accrue until he received the independent autopsy results in October 2017—the written record, and the relevant chapter of its regulations. *See id.* ¶ 91. The appeals board's final determination also discussed the timeliness of Plaintiff's claim by reference to the claim's accrual date—implicitly referencing the very regulation that Plaintiff claims the agency failed to apply. *See id.*

Even so, Plaintiff says, the agency *must* have ignored its own regulations because it set Plaintiff's claim accrual date as the date of his daughter's death, as opposed to the date when he received the independent autopsy results. *See* ECF No. 18 at 14–16. But none of the above suggests that the agency failed to consider its own regulations—only that Plaintiff disagrees with how it applied them. True, Plaintiff alleges that he "was unaware that [his daughter] had died from medical negligence" until October 2017. Compl. ¶¶ 85–86. But the part of the regulation at issue is subjective, and requires less-than-conclusive knowledge of malpractice: it sets the claim accrual date when the claimant "knew, or with the exercise of reasonable diligence should have known" that "malpractice was [the injury's] *possible* cause." 32 C.F.R. § 45.2(c)(3)(ii) (emphasis added). And Plaintiff alleged in his administrative claim before the agency that, during his daughter's awful ordeal, she kept him informed by text about the alleged unreasonable failure of the medical staff on the *USS Ronald Reagan* to provide her care.[1] Thus, nothing suggests that the agency did

---

[1] The Court incorporates into the factual record Plaintiff's administrative claim before the agency, which Defendants attaches to their motion to dismiss. ECF No. 17-1, Ex. A. In resolving a motion to dismiss for lack of subject-matter jurisdiction, the Court "may consider the complaint

not apply its regulations to conclude that Plaintiff "knew, or with the exercise of reasonable diligence should have known" that malpractice was a possible cause of her death when she died.[2] 32 C.F.R. § 45.5(c)(ii).  So Plaintiff has not met his burden of showing that his constitutional due process rights were plausibly violated, such that a potential exception to the finality provision is available.

There is another reason why Plaintiff has not met his burden with respect to showing a violation of his constitutional due process rights related to his claim's accrual date.  As discussed above, the appeals board also denied his claim on a separate and independent ground—that "the Navy properly determined [his] claim was not cognizable because the medical care at issue was not provided at a covered Military Treatment Facility."  Compl. ¶ 113.  And the Court already concluded that doing so did not come close to violating a clear statutory mandate or his constitutional due process rights.  Thus, while "a cause of action is a species of property protected by" the

---

supplemented by undisputed facts evidenced in the record," including any administrative claim. *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (cleaned up). And it would be permitted to do so even if deciding Defendants' motion under Rule 12(b)(6) because Plaintiff incorporates his administrative claim into the complaint by reference and it is central to his allegations.  *See Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). In his claim before the agency, Plaintiff alleged that his daughter "maintained a constant and regular dialogue with her parents . . . via text-messaging, in which [she] set forth details concerning the failure and refusal of the medical staff . . . to provide any medical care whatsoever for [her] steadily-deteriorating medical condition."  ECF No. 17-1 at 29.  Plaintiff further alleged that he was "kept . . . fully apprised and informed of the unreasonable failure and refusal of the medical staff . . . to provide [her] any medical care whatsoever" before her death.  *Id.*  As he received these communications, Plaintiff alleged that he became "increasingly worried, fearful, and anguished about [her] rapidly-deteriorating medical condition . . . and the reported failure and refusal of such medical staff to provide medical care and treatment to [her]."  *Id.* at 30.

[2] Plaintiff argues that this observation is merely a "post hoc rationalization" on which the agency—and the Court—may not rely.  *See* ECF No. 18 at 16 (cleaned up).  But the doctrine he invokes applies to review of agency action under the Administrative Procedure Act.  *See Good Fortune Shipping SA v. Comm'r of IRS*, 897 F.3d 256, 263 (D.C. Cir. 2018).  Here, the Court is determining its subject-matter jurisdiction, and in so doing it may rely on "undisputed facts evidence in the record."  *Mineta*, 333 F.3d at 198.

due process clause, *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982), Plaintiff has not shown that he has a potentially viable cause of action—a property interest—that would be required to assert a due process claim in the first place.

Plaintiff also argues that another court's decision requires the Court to find that what happened here amounts to a constitutional due process violation. ECF No. 18 at 11–13; *see Larumbe v. Austin*, No. 22-cv-1817 (RC), 2023 WL 7156529, at *3 (D.D.C. Oct. 31, 2023). Not so. The *Larumbe* court considered the tolling statute found in 50 U.S.C. § 3936, as opposed to the claim accrual rule in 32 C.F.R. § 45.5(c)(3)(ii). *See Larumbe*, 2023 WL 7156529, at *3. And there, the court found that the plaintiff showed a violation of a clear statutory mandate in the tolling statute, as well as a corresponding due process violation, and thus the MCA did not preclude judicial review. *See id*. at *3–4. For all the reasons explained above, that is not so here.

## IV.   Conclusion

For all these reasons, Plaintiff has not met his burden of showing that Defendants violated a clear statutory mandate or his constitutional rights, thereby at least potentially unlocking this Court's subject-matter jurisdiction under *Broadnax*. Thus, the MCA bars judicial review of his claims, and the Court must grant Defendants' motion and dismiss the case for lack of subject-matter jurisdiction. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: January 29, 2026